CITY OF MADISON, Respondent, v. NICKEL, Appellant.

*No. 339. Argued November 1, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 865.)

For the appellant there was a brief by *Percy L. Julian, Jr.*, and *Percy L. Julian, Jr. Law Offices*, all of Madison,

attorneys, and *Shellow & Shellow* of Milwaukee, of counsel, and oral argument by *Percy L. Julian, Jr.*

For the respondent there was a brief by *Edwin Conrad,* city attorney, and *Larry W. O'Brien,* deputy city attorney, and oral argument by *Mr. O'Brien.*

BEILFUSS, J. The defendant has raised three issues:

1. Is the Madison ordinance as now written unconstitutional?

2. Was the evidence sufficient to prove scienter or knowledge on the part of the defendant that the magazines were obscene?

3. Can the defendant be convicted of more than one violation of the obscenity ordinance arising from a single transaction?

The Madison obscenity ordinance, sec. 26.04 of the General Ordinances of Madison, is as follows:

**"Obscene literature, pictures, etc.**

"(1) *Definitions.*

"(a) 'Obscene.' Material is obscene if:

"1. Its dominant theme taken as a whole appeals to a prurient interest in sex, and

"2. It is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matter, and

"3. It is utterly without redeeming social value.

"(b) 'Knowingly.' A person acts knowingly if he has general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of the character and content of any material described herein which is reasonably susceptible of examination.

"(2) It shall be unlawful for any person knowingly:

"(a) To sell, loan for a monetary consideration, deliver or provide, or offer or agree to sell, loan for a monetary consideration, deliver or provide, any obscene writing, picture, record or other representation or embodiment of the obscene; or

"(b) To present or direct or participate in an obscene play, dance or performance or knowingly to permit the

same on any premises owned or operated by him or under his control; or

"(c) To publish, exhibit, distribute, give away or otherwise make available any obscene material; or

"(d) To possess any obscene material for purposes of sale or other commercial dissemination; or

"(e) To sell, advertise or otherwise commercially disseminate material, whether or not obscene, by representing or suggesting that it is obscene."

This ordinance was re-created into its present form in 1969. It is obvious that in enacting its obscenity ordinance in this form the city council was attempting to and did conform to the then latest United States Supreme Court definition of obscenity. It is, almost verbatim, the definition announced in *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1, and commonly referred to as the *Roth-Memoirs* test.

The United States Supreme Court in *Memoirs,* page 418, stated that in order for obscenity to be found:

". . . it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The *Roth-Memoirs* test was repudiated, however, in *Miller v. California* (1973), 413 U. S. 15, 24, 93 Sup. Ct. 2607, 37 L. Ed. 2d 419, where the court articulated a new standard:

". . . we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or *authoritatively construed.* A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offen-

sive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . ." (Emphasis supplied.)

The defendant contends that the *Miller* formulation has wrought three significant changes: (1) The obscenity law must specify in precise terms the types of acts or depictions which may be deemed obscene; (2) the concept of "community standards" should embody a "state" as opposed to a "national" standard; and (3) the requirement that the material be "utterly without redeeming social value" has been rejected and replaced by a requirement that the material lacks "serious literary, artistic, political, or scientific value."

The same contentions were raised by the petitioner in *State ex rel. Chobot v. Circuit Court* (1973), 61 Wis. 2d 354, 361, 212 N. W. 2d 690, wherein this court considered the constitutionality of the Wisconsin obscenity statute, sec. 944.21, which had incorporated the *Roth-Memoirs* test by judicial construction, *State v. Kois* (1971), 51 Wis. 2d 668, 188 N. W. 2d 467, in view of *Miller, supra.* In *Chobot, supra*, we noted that this court never accepted a "national" community standard. In *Court v. State* (1974), 63 Wis. 2d 570, 578, 217 N. W. 2d 676, this court adopted a statewide community standard. We also pointed out in *Chobot, supra*, pages 365, 366, that the "utterly without" portion of the *Roth-Memoirs* test was not adhered to in this state, but rather the court would look to the material in question to determine whether it had a "social value that is discernable to a reasonable finder of fact . . . . not mere makeweight contrived to

avoid the operation of the rule." *State v. I, A Woman—Part II* (1971), 53 Wis. 2d 102, 119, 191 N. W. 2d 897. With respect to this requirement, the court in *Chobot, supra,* concluded at page 366, that:

". . . So far as Wisconsin is concerned, all *Miller* has done is to limit the concept of 'social value' to a more restrictive literary, artistic, political or scientific sense; all of which are of social value. . . ."

The court held in *Chobot* that the only inadequacy in sec. 944.21, Stats., was that it did not contain an express definition of prohibited depiction of sexual conduct. The problem was corrected by the court's "authoritative construction" specifically authorized by *Miller, supra.* By this court's construction, the word "obscene" was defined to mean:

". . . works which depict or describe sexual conduct, and (1) which taken as a whole appeal to the prurient interest in sex, (2) which taken as a whole portray sexual conduct in a patently offensive way and (3) which taken as a whole do not have serious literary, artistic, political or scientific value. Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards. **** [See, however, *Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56.] Sexual conduct is defined to be acts of sexual intercourse between humans, normal or perverted, actual or simulated, acts of masturbation, fellatio, cunnilingus, and acts of excretory function, lewd exhibition of the genitals especially in a stimulated condition and sexual relations between humans and animals. . . ." *Chobot, supra,* pages 369, 370.

In this construction, the court incorporated all the *Miller* requirements and rejected the *Roth-Memoirs* standards, even though the only significant change was the definition of prohibited conduct.

Such result was relatively easy to achieve with respect to sec. 944.21, Stats., because the term "obscene" was not defined by statute, but defined by this court's construction.[1] However, sec. 26.04 of the Madison General Ordinances contains a definition which is exactly the same as the now constitutionally infirm *Roth-Memoirs* definition, and which contains no litany of the now proscribed conduct. We conclude, therefore, that the ordinance's definition of obscenity does not comport with the latest United States Supreme Court's constitutional construction in *Miller* and this court's definition of obscenity in *Chobot, supra.*

It does not follow, however, that the entire ordinance must fall. Sec. 26.13 of the Madison General Ordinances provides:

"**Severability.** The provisions of any part of this chapter are severable. If any provision or subsection hereof or the application thereof to any person or circumstances, is held invalid, the other provisions, subsections and applications of such ordinance to other persons or circumstances shall not be affected thereby. It is declared to be the intent of this chapter that the same would have been adopted had such invalid provisions, if any, not been included herein."

As a general proposition, the determination as to whether an invalid portion of a statute or ordinance fatally infects the remainder of such law is a question of legislative intent. As stated at 16 Am. Jur. 2d, *Constitutional Law,* pp. 414, 415, sec. 186:

"The question whether portions of a statute which are constitutional shall be upheld while other portions are eliminated as unconstitutional involves primarily the ascertainment of the intention of the legislature. If the

---

[1] *See State ex rel. Chobot v. Circuit Court, supra; State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286; *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545.

objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly, the entire statute is invalid.

"From the foregoing principles it follows that if the purpose of a statute is to accomplish a single object only and some of its provisions are unconstitutional and void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portions. On the other hand, if sufficient remains to effect the object of the statute without the aid of the invalid portion, the latter only should be rejected. . . ."

Similarly, in *State ex rel. Milwaukee County v. Boos* (1959), 8 Wis. 2d 215, 224, 99 N. W. 2d 139, this court stated:

" ' "It is well established that the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone." ' "

As stated in *State ex rel. Reynolds v. Sande* (1931), 205 Wis. 495, 503, 238 N. W. 504:

". . . If a statute consists of separable parts and the offending portions can be eliminated and still leave a living, complete law capable of being carried into effect 'consistent with the intention of the legislature which

enacted it in connection with the void part,' the valid portions must stand. This is the rule and it has been consistently followed." *See also, Estate of Zeimet* (1951), 259 Wis. 619, 49 N. W. 2d 924; *Brittingham & Hixon Lumber Co. v. Sparta* (1914), 157 Wis. 345, 352, 147 N. W. 635.

This court has held, in accordance with the general rule elsewhere, that the existence of a severability clause, while not controlling, is entitled to great weight in determining whether valid portions of a statute or ordinance can stand separate from any invalid portion. *State ex rel. American Legion 1941 Convention Corp. v. Smith* (1940), 235 Wis. 443, 464, 293 N. W. 161; *J. C. Penney Co. v. Tax Comm.* (1940), 233 Wis. 286, 298, 289 N. W. 677;[2] 16 Am. Jur. 2d, *Constitutional Law*, p. 417, sec. 187.

Sec. 26.04 of the Madison General Ordinances was enacted on November 25, 1969, at which time the *Roth-Memoirs* standards were controlling in both the United States and the Wisconsin Supreme Courts. The adoption of the particular definition of "obscenity" used in the ordinance was an obvious attempt by the Madison Common Council to create an obscenity ordinance consonant with the then-controlling judicial definition of obscenity within constitutional limits. We conclude, based on the content of the ordinance, the time at which it was enacted, and the existence of the severability clause, that the common council did not intend the entire ordinance to fail when those constitutional limits were judicially redefined. We, therefore, hold only the portion of sec. 26.04 which defines obscenity, *i.e.*, sub. (1) (a) to be unconstitutional. The remainder of the section is a viable, effective obscenity ordinance when supplemented by this court's "authoritative judicial construction" as was done in *Chobot, supra*. This is accomplished simply by holding the term "obscene" to encompass this court's definition

---

[2] Reversed on other grounds, *sub nom., Wisconsin v. J. C. Penney Co.* (1940), 311 U. S. 435, 61 Sup. Ct. 246, 85 L. Ed. 267.

in *Chobot* as augmented by the definition of "community standards" contained in *Court v. State, supra.* Of course, this construction does not prevent the common council from enacting another definition of "obscenity," not inconsistent with *Miller* or *Chobot,* if it so desires. It probably should.

Having thus construed the ordinance, the question arises as to whether it may be applied to the defendant here. Relying again on *Chobot,* we believe it can be. In dealing with this same question in *Chobot,* we noted that since the mandates of the United States Supreme Court in *Miller, supra,* and its companion cases did not reverse the convictions but only remanded for further proceedings not inconsistent with that decision, the United States Supreme Court intended the new standards to be applied retroactively. This court held that the primary consideration was whether the new formulation was "so unforeseeable as to preclude its retroactive application to punish conduct occurring prior to the rendition of this construction." *Chobot, supra,* page 371. We concluded that it was not.

". . . The changes and modifications wrought by *Miller* are not so substantial in view of this court's prior interpretations of the statute that due process requires that a defendant be given notice of the latest modifications. Nor are the changes so serious as to mislead one intent on obeying the law. . . . the definition of obscenity in *Miller* covers less ground than the previous interpretation of the statute by this court and in that respect Chobot cannot be hurt and should be tried under the interpretation of sec. 944.21 (1) (a), Stats., herein declared." *Chobot, supra,* page 372.

The same reasoning applies to the instant case.[3]

---

[3] *Also see: Hamling v. United States* (1974), 418 U. S. 87, 94 Sup. Ct. 2887, 41 L. Ed. 2d 590; *Amato v. Divine* (7th Cir. 1974), 496 Fed. 2d 441; *Divine v. Amato* (1974), 419 U. S. 1014, 95 Sup. Ct. 487, 42 L. Ed. 2d 288.

Because the magazines in the case at bar need to be tested in light of the entire new formulation, *i.e.*, all three elements, including the relevant definitions of proscribed sexual conduct and community standards, this case is to be remanded for a new trial. An ordinance forfeiture action is a civil action.[4] The pleadings can and should be amended to reflect the *Chobot* definition of obscenity.

The defendant contends that the complaint fails to allege and the city failed to prove that the defendant knowingly sold obscene magazines knowing them to be obscene. The complaint alleges, *inter alia*, that the defendant sold four obscene magazines, identified by title, publisher, volume and issue number, "contrary to section 26.04 (2) (a) of the General Ordinances" of the City of Madison. Sec. 66.12, Stats., provides in pertinent part:

"**Actions for violation of city or village regulations.** (1) *Collection of forfeitures and penalties.* (a) An action for violation of a city or village ordinance, resolution or bylaw is a civil action. . . The affidavit or complaint shall be sufficient if it alleges that the defendant has violated an ordinance, resolution or bylaw of the city or village, specifying the same by section, chapter, title or otherwise with sufficient plainness to identify the same. . . ."

In light of such statute, the complaint is clearly sufficient.

As far as the alleged failure to prove scienter is concerned, the defendant makes no claim that the ordinance is constitutionally infirm in that it fails to require proof of scienter contrary to *Smith v. California* (1959), 361 U. S. 147, 80 Sup. Ct. 215, 4 L. Ed. 2d 205, rehearing denied, 361 U. S. 950, 80 Sup. Ct. 399, 4 L. Ed. 2d 383. She simply contends that the city has failed to prove that element of the ordinance. We believe, however, it is constitutionally necessary to allege scienter.

---

[4] *Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.

Sec. 26.04 (1) (b) of the ordinance provides that:

". . . A person acts knowingly if he has general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of the character and content of any material described herein which is reasonably susceptible of examination."

The unrefuted testimony of Officer Tuttle was that after selecting the magazines he "observed Mrs. Nickel pick up the magazines" and "add up the price. . . ." An inescapable inference is that in so doing the defendant looked at the cover of the magazines, the portrayals on which certainly give indication as to the nature of the contents. If the defendant did not have actual knowledge of the contents of the magazines at this point, she clearly had "ground[s] for belief which warrant[ed] further inspection or inquiry of the character and content" of the magazines. *See Court v. State* (1971), 51 Wis. 2d 683, 689, 188 N. W. 2d 475. It is submitted that the city did prove the knowledge element at least to a reasonable certainty by the greater weight of the credible evidence. Although the defendant did not pursue upon appeal her argument that the complaint did not allege scienter, upon remand and amendment of the complaint better practice will call for an allegation of scienter.

The defendant contends she could not be found to have violated the ordinance four times because it was a single transaction. The particular magazines in this case were all sold at the same time, to the same person, by the same person, at the same place. Those facts do not preclude a separate finding of a violation of the ordinance and a separate forfeiture on the sale of each magazine. This is so because each magazine is different, and the obscenity *vel non* of each magazine must be determined independently, without regard to the others. The defendant cites three cases from other jurisdictions which she contends require a contrary result. It is clear, however, that the proscribed acts in two of those cases were merely cumu-

lative. Here, each magazine gives rise to an individual factual and constitutional inquiry. The third case cited by the defendant involved the construction of a Minnesota statute which prohibited punishment for more than one of several offenses growing out of the same conduct. (Sec. 609.035, Minn. Stats.) *State v. Carlson* (1971), 292 Minn. 38, 192 N. W. 2d 820. No similar provision exists in Wisconsin. The situation would be different if the defendant had sold Officer Tuttle four copies of the same magazine. Under the facts here, the defendant was properly charged and could be found to have violated the ordinance as to all four separate counts.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.