CASTLE NEWS COMPANY, a Wisconsin Corporation, Plaintiff,

v.

Jerome CAHILL, District Attorney, Waukesha County, Wisconsin, Edward O'Connor, Sheriff, Waukesha County, Wisconsin, Marlyn E. Fisher, Chief of Police, Village of Butler and their agents, employees, successors in office, assistants, and all others acting in concert or cooperation with them, at their direction or under their control, Defendants.

No. 78–C–502.

United States District Court, E. D. Wisconsin.

Nov. 13, 1978.

Stephen M. Glynn, Shellow & Shellow, Milwaukee, Wis., for plaintiff.

Franklyn M. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for Cahill & O'Connor.

Thomas Balistreri, Asst. Atty. Gen., Madison, Wis., for State.

Terrance E. Davczyk, Kasdorf, Dall, Lewis & Swietlik, Milwaukee, Wis., for Fisher.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This case involves constitutional attacks on the Wisconsin Obscenity Statute (Wis. Stat. § 944.21) and a seizure of numerous items under an allegedly defective search warrant. Defendants have requested this Court to abstain under the doctrine created in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Defendant further moves this Court to dismiss the dam-

**176**

age claims against defendants Cahill and O'Connor both on the basis of official capacity immunity and on the strict limits of 42 U.S.C. § 1983 liability. This Court declines to abstain for the reasons set out below and, therefore, will consider the merits of plaintiff's constitutional rights.

Plaintiff has filed a motion for a preliminary injunction requesting this Court to enjoin any prosecutions under Wis.Stat. § 944.21 and to order the return of the allegedly obscene material which plaintiff claims was illegally seized. Plaintiff's complaint seeks: a declaratory judgment declaring § 944.21 unconstitutional; damages based upon 42 U.S.C. § 1983; a preliminary injunction enjoining defendants from prosecuting plaintiff under Wis.Stat. § 944.21; return of all materials seized from plaintiff's premises, with the exception of those materials actually viewed by Judge Flores in issuing the warrant; compensatory damages for the loss suffered by plaintiff in the seizure and concomitant disruption of business; punitive damages for violations of plaintiff's constitutional rights; and plaintiff's costs and attorney's fees.

The facts that have developed in this case by way of affidavit and pleadings indicate that the following events occurred leading to the present action. On August 4, 1978, Officer Robert Radovich of the Milwaukee Police Department appeared before Judge Ness Flores, Circuit Judge, Waukesha County, Wisconsin, for the purpose of obtaining a search warrant to search "a one-story brick building with brick veneer front containing office and warehouse space located at 4551 N. 125th Street, Butler, Wisconsin" occupied by the Castle News Company. A transcript of the proceedings held before Judge Flores has been supplied by plaintiff to supplement the record.

Defendant Jerome Cahill, district attorney for Waukesha County, appeared before Judge Flores to present the application for the search warrant at issue. Mr. Cahill presented the search warrant accompanied by the affidavit of Officer Radovich to the effect that he purchased materials from the Castle News Company. The Radovich affi-davit incorporates as exhibit "A" a bill of sale # 51623 dated August 3, 1978 from Castle News for $117.58 and an inventory of the purchases covered by the bill of sale marked exhibit "B." The purchase, a cash sale, involved a total of forty different items. The inventory attached to the warrant, as incorporated by the affidavit, indicates that the materials were held in one box with "Bill Jenkins and Al.S." written thereon. The inventory lists forty separate titles covering various magazines, paperback books and films.

The record of the hearing before Judge Flores indicates that one Bill Jenkins, who is in fact Herbert Dole, an agent of the Federal Bureau of Investigation, placed the order evidenced by the August 3, 1978, bill of sale from Castle News. The record indicates that Mr. Jenkins had been working with Officer Radovich and Officer Raymond Stancyck of the Milwaukee vice squad for six months prior to the August 4 hearing.

Officer Radovich testified that he spoke to one Al Seigel at Castle News giving Seigel specific directions as to how to locate the place for delivery of the Dole/Jenkins order. A man who identified himself to be Al Seigel delivered the box to 2020 West Layton Avenue on August 3, 1978, Officer Radovich being present. Officer Radovich then made an inventory of the items delivered in the box.

Officer Radovich indicated those items that he felt were "hard-core" pornography. Officer Radovich indicated, however, that he had not viewed the given films inventoried, but that it was his experience that the films do purport to be the acts depicted in the pictures on the box covers. Judge Flores viewed a film entitled "Christy Gets the Job" and was satisfied that it was pornography as described in Wis.Stat. § 944.-21(1)(a). Judge Flores also viewed two magazines entitled "Tri-Orgy" and "One Night Stand" and similarly determined these to be pornography as defined by the Wisconsin Statute. Therefore, Judge Flores determined, after declaring that he had made a fair sampling, that there was

probable cause for the search and issued the search warrant in issue in this case.

On August 4, 1978, a search was made of the Castle News Company warehouse and offices located at 4551 N. 125th Street, Butler, Wisconsin. During this search, pursuant to warrant, numerous items were seized. Among these were financial and business records, as permitted by the warrant; books; films; and magazines. A comparison of the inventory of those items purchased on August 3, 1978 with those allegedly pornographic items seized on August 4, 1978, indicates that more items were seized than were contained in the affidavit attached to the warrant.

This action was filed on August 7, 1978, before criminal prosecution was begun against the Castle News Company. The defendants stipulated to stay further action until this Court has an opportunity to rule on the constitutional issues raised by plaintiff. That is the current state of this case.

I.

■ Before discussing the constitutionality of the Wisconsin Obscenity statute and the warrant under which the search of plaintiff's business was conducted, this Court must determine whether it is under an obligation to abstain. For the reasons set forth herein, it is this Court's considered opinion that it should not abstain, and consequently, defendants' motion to dismiss based upon that ground must be denied.

In the case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the United States Supreme Court created the doctrine of "Our Federalism." Such a policy executes the concept of separation of powers engrained within the Constitution. Under this doctrine, a federal district court should abstain from interfering in a state criminal prosecution except in an extraordinary case. The Court indicated that this was based upon a "fundamental policy against federal interference with state criminal prosecutions." *Id.* at 46, 91 S.Ct. at 751. The test to be used is whether intervention is needed to protect the petitioner from immediate irreparable injury.

This Court, however, need not reach the question of whether Castle News will be subjected to such injury.

In the cases of *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), and *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the United States Supreme Court created an exception to *Younger*, supra. In *Steffel*, the court held that when a plaintiff seeks a declaratory judgment declaring a state statute unconstitutional, a federal court can grant federal declaratory relief if plaintiff shows that there is a genuine threat of enforcement of a disputed state criminal statute.

In *Doran v. Salem Inn, Inc.*, supra, the Supreme Court held that an injunction can issue to preserve the status quo in a case in which plaintiff was seeking declaratory relief, as long as the state criminal prosecution has not commenced. *Doran, supra*, at 930–31, 95 S.Ct. 2561. *See, also, Village of Belle Terre v. Boraas*, 416 U.S. 1, at 3 n.1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

Defendant, in oral argument before this Court, referred this Court to the recent case of *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), decided in the same year as *Doran, supra*. *Hicks* is not relevant to the case at hand. In *Hicks*, the plaintiff, a theatre owner, sued for declaratory relief and a preliminary injunction.

Although there was no pending criminal prosecution involving the theatre owner, state criminal proceedings were pending against the theatre owner's employees and copies of a film that had been seized. One day after the federal complaint was served, the theatre owner was added as a defendant in the criminal case.

Under these circumstances, the court held that the interests of the theatre owner and the employees was so intertwined that "the federal action sought to interfere with the pending state prosecution." *Hicks v. Miranda, supra*, at 348–49, 95 S.Ct. at 2291. The court further added "that where state criminal proceedings are begun against the federal plaintiffs after the federal com-

plaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Id.*

The holding of *Hicks, supra,* is not apropos in the present case for two reasons. First, to this Court's knowledge, there are currently no related state prosecutions pending in this case. Mr. Franklyn Gimbel, attorney for defendant, has filed numerous papers in this case, but none of these point to any pending state prosecutions. Also, during oral argument when Mr. Gimbel advocated that this court abstain on the basis of *Hicks v. Miranda, supra,* Mr. Gimbel did not assert that there were any related state prosecutions pending. Therefore, this Court is satisfied that there are none pending. Secondly, a stay by way of stipulation was entered into holding plaintiff's criminal prosecution in abeyance and several appearances have been entered in this case, including oral arguments on the constitutional issues. Therefore, this Court finds that state criminal prosecutions are not pending against plaintiff and that substantial federal proceedings have occurred. For those reasons, this Court need not abstain on the basis of the holding in *Hicks v. Miranda* as suggested by plaintiff.

Rather, this Court relies on the cases of *Steffel v. Thompson, supra,* and *Doran v. Salem Inn, Inc., supra.* Further, this Court holds that plaintiff meets the criteria established in those cases.

Plaintiff in the present case has established, to this Court's satisfaction, that this case fits within the criteria set forth in those cases. Among other forms of relief, plaintiff is seeking a declaratory judgment that Wis.Stat. § 944.21(1)(a) is unconstitutional. Although a search warrant was issued in this case and several items of plaintiff's property were seized, there is currently no state prosecution pending against plaintiff. Finally, the threat of prosecution, in light of the seizure and the facts outlined in the opinion, is very real indeed.

## II.

■ Having disposed of the question of whether this Court should abstain, the Court now reaches the first substantive issue presented in this case, whether the Wisconsin Obscenity Statute is constitutional. Wis.Stat. § 944.21 provides:

(1) Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than 5 years or both:

(a) Imports, prints, advertises, sells, has in his possession or sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; or

(c) Has in his possession, with intent to transfer or exhibit to a person under the age of 18 years, any matter prohibited by this section; or

(d) Advertises, produces or performs in any lewd, obscene or indecent performance.

(2) Whoever requires, as a condition to the purchase of periodicals, that a retailer accept material known by the distributor to be lewd, obscene or indecent may be fined not more than $5,000 or imprisoned not more than 5 years or both.

The Castle News Company claims that this statute, as interpreted by the Wisconsin Supreme Court, is unconstitutional and seeks a declaratory judgment from this Court declaring the statute as such.

In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court established the following three-prong test to be used to determine whether material is obscene:

(1) [whether] 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (2) [whether] the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) [whether] the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* at 24, 93 S.Ct. at 2615.

It is clear from a close reading of *Miller, supra,* that the first two prongs of the

*Miller* test, whether the obscene material appeals to prurient interest and whether it depicts sexual conduct in a patently offensive way, must be tested by contemporary community standards. Plaintiff has no quarrel with this interpretation, but argues that in applying the third prong, an objective standard must be used, *i. e.*, a standard that would remain constant in every corner of the United States. *See, United States v. Heyman*, 562 F.2d 316 (4th Cir. 1977) where this issue was authoritatively discussed. This Court opines that this is correct interpretation of *Miller v. California, supra.*

In *Miller*, the Supreme Court held that in determining whether an obscenity statute is constitutional, the court must read the statute in light of the judicial gloss placed upon it by courts of the state. In *State ex rel. Chobot v. Circuit Court*, 61 Wis.2d 354, 212 N.W.2d 690 (1973), the Wisconsin Supreme Court set out to conform the Wisconsin Obscenity statute, Wis.Stat. § 944.21, with the test set out in *Miller*. The Wisconsin Supreme Court specifically stated its intent to define § 944.21 to comport with *Miller* and after defining the word obscene, the court stated:

> the sexual conduct so defined must be portrayed in a patently offensive manner; and the work, so portraying sexual conduct, taken as a whole, must appeal to the prurient interest in sex of the average person judged by contemporary community standards and have no serious literary, artistic, political or scientific value. All other expression or portrayal of undefined sexual conduct apparently is protected by the First Amendment to the constitution.

> What appeals to 'prurient interest in sex' must be judged by community standards. What amounts to 'patently offensive' in the manner of description is not expressly defined in *Miller*, but it is reasonable to read this term, too, as being determined by contemporary community standards (*see* our comment, page 149, in *McCauley v. Tropic of Cancer* (1963), 20 Wis.2d 134, 121 N.W.2d 545. There is no vagueness in the commonly-accepted meaning of the terms 'literary, artistic,

political or scientific value' and these are qualified by the adjective 'serious' which means important and not trifling. *Id.* at 359–60, 212 N.W.2d at 693.

This Court opines that at this point in its opinion, the Wisconsin Supreme Court set forth definitively the test to be applied in determining whether materials are obscene under Wis.Stat. § 944.21. It is important to reiterate what the court said in reference to the third prong of the *Miller* test. The court stated that "[t]here is no vagueness in the commonly-accepted meaning of the terms 'literary, artistic, political or scientific value.'" *Id.* at 360, 212 N.W.2d at 693. There is no question in this Court's mind but that the Wisconsin Supreme Court properly grasped the United States Supreme Court's holding in *Miller v. California.*

It is important to note at this point that the Seventh Circuit Court of Appeals had an opportunity to consider the effect of *Chobot* on the constitutionality of Wis.Stat. § 944.21 in light of *Miller v. California*. In *Amato v. Devine*, 558 F.2d 364 (7th Cir. 1977), the court was reconsidering an earlier opinion in which it had affirmed a writ of habeas corpus granted on the basis that Wis.Stat. § 944.21(1)(a), under which the petitioner was convicted, was held unconstitutionally vague. (*See, Amato v. Devine*, 496 F.2d 441 (7th Cir. 1974)). The United States Supreme Court vacated the decision and remanded the case, *Amato v. Devine*, 419 U.S. 1014, 95 S.Ct. 487, 42 L.Ed.2d 288 (1974), for further consideration in light of *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and *State ex rel. Chobot v. Circuit Court*, 61 Wis.2d 354, 212 N.W.2d 690 (1973).

In reconsidering Wis.Stat. § 944.21, the Seventh Circuit Court of Appeals stated:

> [1] In *Chobot*, . . . the Wisconsin Supreme Court authoritatively construed the word 'obscene' in Wisconsin Statutes § 944.21(1)(a) to comport with the test for obscenity formulated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As so con-

strued, the Wisconsin obscenity statute meets First Amendment standards and any objection to its constitutionality on vagueness grounds has been eliminated. *Id.* at 24, n.6, 93 S.Ct. 2607; *Hamling, supra,* 418 U.S. at 110–114, 94 S.Ct. 2887. *Amato v. Devine,* 558 F.2d at 365.

It is clear that the Seventh Circuit Court of Appeals was of the opinion that Wis. Stat. § 944.21(1)(a) as construed by the Wisconsin Supreme Court in *Chobot, supra,* comported with the *Miller* test. Although the parties who appeared before this Court at the hearing on preliminary injunction argued that *Amato, supra,* is inapplicable, this Court, after careful consideration of the quoted *Amato* opinion, finds this argument hard to accept. The language of the opinion and the mandate of the Supreme Court of the United States indicate that the Seventh Circuit Court of Appeals considered the constitutionality of § 944.-21(1)(a) and found that it satisfied the *Miller* test.

Plaintiff argues that at one point in *Chobot, supra,* and in the case of *City of Madison v. Nickel,* 66 Wis.2d 71, 223 N.W.2d 865 (1974), where the court discussed the Madison obscenity ordinance, the Wisconsin Supreme Court held that all three prongs of the *Miller* test are to be judged by contemporary community standards. Plaintiff argues that in *Nickel,* and in the rehearing of *Chobot,* the Wisconsin Supreme Court restated the apparent error in the original *Chobot* opinion thereby indicating that the language on page 370 of 61 Wis.2d, 212 N.W.2d 690 was not an error. This Court cannot accept that argument.

While it is true that one point in *Chobot* and in *Nickel* the Wisconsin Supreme Court apparently misstated the *Miller* test, these opinions must be read in light of the court's avowed intent to comport Wis.Stat. § 944.21 with the test established in *Miller v. California, supra.* This Court opines that these cases, *Chobot* and *Nickel,* must be read carefully. First, *Nickel* dealt not with Wis. Stat. § 944.21, but rather with the City of Madison's obscenity ordinance. There, the court attempted to comport the Madison ordinance with *Miller,* but erred in properly stating it. This case is an unpersuasive argument vis-a-vis the constitutionality of § 944.21. The court was not considering the statute and did not mandate how section 944.21 was to be interpreted, and further, the court again avowedly indicated an attempt to comply with *Miller.*

Second, *Chobot,* the definitive opinion setting forth the definition of obscenity to be utilized by Wisconsin, is the key case for this Court to consider. By reading *Chobot* as a whole, without isolating potentially questionable portions, it clearly complies with the test outlined in *Miller.* Further, this Court is bound to follow the mandates of the Seventh Circuit Court of Appeals and in the second *Amato* opinion, *Amato v. Devine,* 558 F.2d 364 (7th Cir. 1977), that body held that, as interpreted by the Wisconsin Supreme Court in *State ex rel. Chobot v. Circuit Court,* 61 Wis.2d 354, 212 N.W.2d 690 (1974), Wis.Stat. § 944.21(1)(a) is constitutional.

Therefore, this Court hereby holds that in light of the foregoing, Wis.Stat. § 944.-21(1)(a) is constitutional. This finding, however, does not fully dispose of this case in light of plaintiff's attacks on the constitutionality of the search warrant utilized by defendants to seize several of plaintiff's materials.

### III.

As indicated by comparing the list of the items seized with the materials enumerated in the search warrant, the police seized more items than were listed in the police inventory made a part of the warrant issued by Judge Flores on August 4, 1978. The questions here concerning the warrant are: 1) whether there is a technical defect in the warrant; 2) whether that defect renders the warrant unconstitutional; and 3) if not, then whether any part of the seizure went beyond the scope of the warrant, and as such, whether any materials should be restrained from use as evidence.

In a first amendment case, a search warrant should be read with extreme care

in order to protect against seizure of those materials protected by the first amendment. The United States Supreme Court held in the case of *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965), that "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain."

■ The alleged defect in the warrant here was the failure of the issuing judge to incorporate the affidavit into the warrant by reference in the warrant itself. A warrant must be specific as to place to be searched and materials to be seized. *Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). Plaintiff in the present case questions only the description of the materials to be seized arguing that this defect rendered the warrant unconstitutional.

■ Although the warrant itself may contain only general language, it can be rendered adequate by references in an affidavit properly incorporated into the warrant. *United States v. Freeman*, 532 F.2d 1098 (7th Cir. 1976). Having determined that a properly referenced affidavit can adequately narrow a search warrant, this leaves the question of whether the failure to reference the affidavit attached to the warrant presently in question is a fatal defect.

■ This Court is aware of its special obligation in first amendment cases to read the search warrant now in question with extreme exactitude. However, this should not lead to placing form over substance resulting in an absurd conclusion. If this Court were to read the guidelines that the warrant must reference the affidavit to be mandatory, the result would surely lead to placing form over substance. It is quite clear from a reading of the transcript of the proceedings before Judge Flores on August 4, 1978, when the warrant with attached affidavit was issued, that the warrant did

rely on the affidavit for clarification. Judge Flores had it before him and relied upon it.

In *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976), the court discussed what a warrant should accomplish. The court stated that a search warrant must

> be sufficiently definite to enable the searcher to reasonably ascertain and identify the place authorized to be searched and the things authorized to be seized. The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of . . . rights is likely.

However, in discussing this the court further stated that "the standard is one of practical accuracy rather than technical nicety." *Id.* at 1313. To the same effect is Wis.Stat. § 968.22 which provides that "no evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."

Since the defect in the search warrant in question was only technical and as such did not affect plaintiff's substantial rights, this Court holds that the warrant itself was not constitutionally defective.

This leaves the question of whether the seizure was in part or in whole defective because more materials were seized than were spelled out in the search warrant issued by Judge Flores and because Judge Flores only viewed a random sample of the materials in an ex parte hearing. In *Marcus v. Search Warrant*, 367 U.S. 717, 731–32, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961), the United States Supreme Court held:

> We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing

judge, still the warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. The warrants gave the broadest discretion to the executing officers; they merely repeated the language of the statute and the complaints, specified no publications, and left to the individual judgment of each of the many police officers involved the selection of such magazines as in his view constituted 'obscene . . . publications.' So far as appears from the record, none of the officers except Lieutenant Coughlin had previously examined any of the publications which were subsequently seized. It is plain that in many instances, if not in all, each officer actually made *ad hoc* decisions on the spot and, gauged by the number of publications seized and the time spent in executing the warrants, each decision was made with little opportunity for reflection and deliberation. As to publications seized because they appeared on the Lieutenant's list, we know nothing of the basis for the original judgment that they were obscene. It is no reflection on the good faith or judgment of the officers to conclude that the task they were assigned was simply an impossible one to perform with any realistic expectation that the obscene might be accurately separated from the constitutionally protected. They were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity.

■ Although Judge Flores reviewed the materials that Officer Radovich pointed out were obscene, he only examined a random sample. In *United States v. Tupler*, 564 F.2d 1294, 1298 (9th Cir. 1977), the court held: "A searching focus on obscenity requires the issuing judge or magistrate to base his evaluation of probable cause on direct evidence of the contents of at least a fair sample of the material itself." Before granting the search warrant, Judge Flores looked at a fair sample by reviewing one

movie and two magazines, all three of which he found to be obscene under the statute. As to the fact that the warrant was issued at an ex parte hearing, as opposed to an adversary hearing, the court in *Huffman v. United States*, 152 U.S.App. D.C. 238, 470 F.2d 386 (1971) held that, although in *A Quantity of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) the Supreme Court ruled that an ex parte hearing is insufficient, this was not the case when the seizure was for evidentiary purposes. The court in *Huffman* stated:

> . . . an *ex parte*, as opposed to adversary hearing, is a sufficient basis for an order authorizing (a) the seizure of a limited number of publications (b) for use as evidence in a criminal prosecution (as distinguished from an order entered in a civil action having the purpose of suppressing the books).

*Huffman, supra*, 470 F.2d at 392.

Therefore, this Court holds that as to the warrant issued at an ex parte hearing and as to the seizure of the materials mentioned in the warrant, these were both constitutional.

This leaves the question of whether the seizure of those materials not mentioned in the warrant was valid. In discussing the need for particularity of a warrant and constitutional abhorrence to a general seizure, the United States Supreme Court in *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) stated:

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

(*See, also, United States v. Dzialak*, 441 F.2d 212 (2nd Cir. 1971)). In the case of *United States v. Wild*, 422 F.2d 34 (2nd Cir. 1969), the court considered whether allegedly obscene materials could be seized pursuant to arrest without a search warrant. The court held:

In conjunction with the specific claim that the items seized should have been suppressed, appellants present a broader argument that seizures in an obscenity case without a prior adversary hearing on the issue of obscenity are unconstitutional under *Quantity of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and *Marcus v. Search Warrants*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). These cases are inapposite since they involved massive seizures of books under state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction. The seizures in this case were of instrumentalities and evidence of the crime for which appellants were indicted and lawfully arrested. We do not believe *Marcus* and *Quantity of Books* can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases. *Wild, supra*, at 38.

The questioned seizures in the present case were made while the police were serving a valid search warrant which described those materials to be seized.

■ There are two strong factors that indicate to this Court that the seizures of the materials should not be suppressed and that no materials should be returned. First, the seizures were made at the time of a lawful search pursuant to a constitutionally specific warrant. As a matter of practical police enforcement, it is hard for this Court to accept that when the police see materials similar to what they are authorized to seize that they should be prevented from doing so. This Court has reviewed the magazines adjudged by Judge Flores and agrees that there is no question but that these are legally obscene. The police should not be restrained from seizing similar items, if done within reason. This leads to the second reason why this Court holds that all the seizures in this case are valid. Rather than seizing the total quantity of all the alleged obscene materials not referenced in the affidavit, the police seized only three of each item. However, the officers seized numerous copies of the two magazines re-viewed by Judge Flores. This Court opines that, although many of these items were not mentioned in the search warrant, the police seized only a limited number of copies arguably solely for evidentiary reasons. Therefore, this Court holds that, for the purpose of denying the preliminary injunction, the seizures in this case that were beyond the items set forth in the warrant were reasonable in scope and permissible in the context of a constitutional search and seizure when evidentiary copies were seized for later judicial determination.

## IV.

Defendants Jerome Cahill and Edward O'Connor have filed two separate motions to dismiss. In the interest of clarity, these motions will be discussed separately under the appropriate heading.

### A. IMMUNITY

■ Defendant O'Connor asserts that he has a qualified immunity as sheriff citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974) and *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In *Scheuer* the court held:

> In varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

The court held further, however, that defendant must show that his actions were in good faith; that he had reasonable grounds for belief in the validity of his conduct; and that his actions were in the course of his official conduct, before the qualified immu-

nity could result in dismissal. Although a police officer or sheriff does have a qualified immunity, *Pierson v. Ray, supra*, at this pleading state, O'Connor's good faith has been drawn into question. Therefore, his motion to dismiss based upon immunity must be denied.

Defendant Cahill relies upon absolute immunity in his judicial function and qualified immunity in his investigatory capacity. While it is true that in his prosecutorial capacity Mr. Cahill is clothed with quasi-judicial immunity, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), that still leaves him with only a qualified immunity in his investigatory capacity. *Briggs v. Goodwin*, 186 U.S.App. D.C. 179, 569 F.2d 10 (1977). There are sufficient allegations in plaintiff's complaint under the Federal Rules of Civil Procedure that defendant Cahill is charged in all his official functions.

As such, at this time, Cahill's motion for dismissal based on immunity must be denied. The pleadings draw Cahill's good faith into question and, therefore, plaintiff may be able to prove sufficient facts to prove liability. However, defendants have also moved to dismiss on an alternative basis.

### B. 42 U.S.C. § 1983

In order to recover from a defendant under section 1983, a plaintiff must show that the defendant was a direct participant. In *Adams v. Pate*, 445 F.2d 105, 107 n.2 (7th Cir. 1971), the court held that "Where monetary damages, as distinguished from equitable relief, is sought under the provisions of the Civil Rights Act the doctrine of respondeat superior does not apply; personal involvement of the defendant is required."

This Court finds that as to both defendants, Cahill and O'Connor, the pleadings adequately charge them with direct involvement. This is sufficient to overcome a motion for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Further, this Court takes notice of the fact that, as to defendant Cahill, his involvement is evi-denced by his appearance before Judge Flores to obtain the search warrant involved in this case. Therefore, defendants' motions to dismiss based upon their lack of direct involvement must be denied.

### V.

Plaintiff is requesting a preliminary injunction in this case staying prosecution and ordering the return of those items allegedly illegally seized. In order to grant a preliminary injunction, four prerequisites must be met: (1) plaintiff must show that he has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the plaintiff must show that he has a reasonable likelihood of success on the merits; (3) that granting the injunction will not disserve the public interest, and (4) the threatened injury to plaintiff must outweigh the injury the injunction may cause the defendant. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products*, 545 F.2d 1096 (7th Cir. 1976). Plaintiff has the burden of persuasion as to all of these prerequisites.

In light of the foregoing discussion, plaintiff has not met his burden. From this Court's discussion of the constitutionality of Wis.Stat. § 944.21 (the obscenity statute) and the warrant issued in this case, it is this Court's opinion that plaintiff does not have a "reasonable likelihood of success on the merits." As such, plaintiff's motion for a preliminary injunction must be denied.

Therefore, in light of the foregoing discussion, this Court hereby orders:

That defendants' motion to dismiss on the basis of abstention is hereby DENIED;

Defendants Cahill and O'Connor's motions to dismiss are hereby DENIED; and

Plaintiff's request for a preliminary injunction is also hereby DENIED.