SIEB, Appellant, vs. CITY OF RACINE and others, Respondents.

*February 11—April 11, 1922.*

*Schools: Superintendent of city schools: General charter law: Special statute: Whether officer or employee: Increase of salary during term: Trial: Affidavit of prejudice: Filed after term commences: Appeal: Equal division of appellate court.*

1. Where the justices of the supreme court are equally divided in opinion—in this case on the question whether under sec. 2625, Stats., as it existed on June 10, 1921, a motion for a change of venue based upon an affidavit of prejudice of the presiding judge, presented after the term had been commenced but after a recess of one week had been taken, was timely made—the ruling of the trial court cannot be disturbed.

2. Sec. 926—115, Stats. (ch. 360, Laws 1903), providing that in all cities except those of the first class the board of education may elect a superintendent of schools for not exceeding three years, applies to the city of Racine; ch. 388, Laws 1905, amended ch. 360, Laws 1903, relative to the election of a superintendent in cities of the third class, by providing for their election by the board of education, and that the act shall apply to all such cities in which a superintendent is elected or appointed by the board, and repealed all conflicting acts. If there was any conflict between sec. 926—115 and the general charter law (sec. 925—115), which had been adopted by the city of Racine in 1905, sec. 925—115 is expressly repealed by sec. 926—115.

3. As a matter of public policy, a city superintendent of schools should not be held to be a public officer who, as required by sub. (2), sec. 62.09, Stats. 1921, in the case of city officers, must be a citizen, unless such is plainly the legislative intent; it being a matter of common knowledge that city boards of education frequently deem it for the best interests of the schools to select men for such position who are not residents of the state.

4. Under said sec. 926—115, Stats., such an appointee is not an officer, as the statute prescribes no definite term, does not require an oath, and confers no functions of sovereignty unless it be in licensing teachers, all of which are usual, if not indispensable, characteristics of an office.

5. In analogy to the rule that the salary of a public officer may be raised or diminished during his term unless forbidden by law, a city board of education may abrogate contracts with the city superintendent of schools and enter into new contracts for increased compensation; the public policy declared in sec. 26, art. IV, Const. (prohibiting the legislature from granting extra compensation to any public officer, agent, servant, or contractor after the services have been rendered or the contract entered into), being applicable only to public officers and contractors who are paid out of the state treasury, and by sec. 59.15 and sub. (6) (b), sec. 62.09, Stats. 1921, to county and city officers but not to contractors.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff in his capacity as taxpayer of the city of *Racine* to restrain the city officers from paying the defendant *Longanecker,* who is the city superintendent of schools, what is alleged to be an unlawful increase of salary.

The material facts are that the defendant *Longanecker* was elected city superintendent of schools by the board of education of the city of *Racine* on March 7, 1919, to serve for three years from August 1, 1919, at a salary of $3,500 for the first year, $3,750 for the second year, and $4,000 for the third year. On the 16th day of September, 1919, the board of education increased the salary to $4,500 per year, covering the period of his contract. On December 5, 1919, a written contract was entered into between the defendant and the board of education embodying the terms fixed on September 16th. On April 2, 1920, the board entered into a new contract with the superintendent fixing the salary at $4,750 for the year beginning August 1, 1921, and $5,000 for the succeeding year. On December 2, 1920, the defendant *Longanecker,* at the request of the board of

education, surrendered his contract then in force and expiring July 30, 1922, and a new contract was made, taking effect January 1, 1921, employing the defendant *Longanecker* as superintendent of schools at a salary of $6,000 per annum until July 30, 1923.

The trial court, upon finding the facts substantially as stated, rendered judgment in favor of the defendant, and from the judgment so rendered the plaintiff brings this appeal.

The cause was originally argued on November 17, 1921. On December 8, 1921, a reargument was ordered on the following questions:

1. Does the power and authority to license teachers constitute a function of sovereignty?

2. Should it be held that the superintendent is an officer, is he a city or school district officer?

3. If a school district officer, did the board of education have power to increase his salary or compensation?

4. If it be held that the superintendent is an employee, did the board of education have power to modify the contract of employment by increasing his compensation; or, in other words, was its power in that respect exhausted when it entered into the initial contract?

For the appellant there were briefs by *Hand & Quinn* of Racine, and oral argument by *E. B. Hand.*

For the respondent *Longanecker* there was a brief by *Simmons & Walker* of Racine, and oral argument by *John B. Simmons.*

OWEN, J. The case was upon the calendar of the circuit court for the term commencing on April 11, 1921. On May 13th the jury was excused. During the week beginning May 30th no session of the court was held. Sessions were resumed on June 6th. On that day the plaintiff moved for a change of venue, based upon an affidavit of the prejudice of the presiding judge. The court denied the motion,

holding that it should have been made on the first day of the term, and could not be made thereafter. The motion was renewed and a like ruling made on June 10th. The appellant assigned the denial of the motion as error.

The statute then in force (sec. 2625) required the affidavit of prejudice to be filed "on or before the first day of the term, or of the resumed session thereof, at which the case is triable." The appellant contends that the session of the court held on the 6th day of June was a "resumed session" within the meaning of the statute. What is meant by the term "resumed session" is certainly a matter of great doubt. It is a question upon which we are equally divided. In a certain sense there is a resumed session every day that the court sits, but, obviously, the legislature did not have in mind the sessions occurring from day to day, as in such case there would be no point in requiring the affidavit to be filed on the first day of the term. Formerly a case could be put on the calendar only by a notice of trial served ten days prior to the term, but by ch. 592, Laws 1913 (sec. 113.09, Stats. 1921), a case can be noticed for trial at any time after issue joined and put upon the current calendar upon ten days' previous notice. Respondent contends that the provision has reference to such cases, and as to such cases only permits the affidavit to be filed at the first session of the court after the expiration of the prescribed notice. This contention would seem to be shattered by the fact that the legislature, by ch. 428, Laws 1921, specifically provided that "if the case is not noticed for trial in time to be placed upon the calendar at the commencement of the term then [the affidavit may be filed] within ten days after the case is noticed for trial." This amendment was wholly unnecessary if this section, as it stood prior to the amendment, is to be interpreted in accordance with respondent's contention. The section as it now stands provides that the affidavit shall be filed "on or before the first day of the term, or of the resumed session thereof, at which the case is triable, or

if the case is not noticed for trial in time to be placed upon the calendar at the commencement of the term then within ten days after the case is noticed for trial."

It is difficult to give the phrase "or of the resumed session thereof" any meaning without destroying the requirement that the affidavit be filed on the first day of the term, or rendering entirely superfluous the amendment supplied by ch. 428 of the Laws of 1921. As already stated, we are equally divided in our views as to whether the affidavit was timely filed, the result being that the ruling of the court in that respect cannot be disturbed. We suggest, however, that the situation affords possibilities for legislative clarification.

Coming to the merits of the controversy, it is conceded that the board of education, with reference to the transaction here involved, pretended to act in pursuance of the provisions of sec. 926—115, Stats. 1919, which provides as follows:

"In all cities except cities of the first class, there may be elected by the board of education or the board of school commissioners, a city superintendent of schools for a term not to exceed three years, whose duties shall be: (1) To examine and license teachers according to the statutes; (2) To supervise the administration of the courses of study; (3) To have general supervision of the professional work of the schools of the city, including the holding of teachers' meetings and the promotion of pupils; (4) From time to time to make a written report to the board of education or board of school commissioners, as the case may be, embodying such recommendations relative to the employment of teachers, adoption of text-books, changes in the course of study, enforcement of discipline, and such other matters as said superintendent may deem for the best interests and welfare of the city schools; (5) To make such other reports and to perform such other duties as the board of education or board of school commissioners may direct and which are not in conflict with the provisions of this act. The board of education or the board of school commissioners shall deter-.

mine the annual compensation to be paid said city superintendent of public schools from the school funds of the city."

It is claimed by appellant that this provision is not applicable to the city of *Racine,* and that the power of the board of education to elect a superintendent of schools is referable to sec. 925—115, Stats. 1919 (general charter law), which provides that the superintendent of schools shall hold his office for one year and until his successor shall have been elected. If the power of the board of education in this respect is referable to the latter section, then it is plain that they could not elect a superintendent of schools for a longer term than one year, and that their contract with him for three years was void.

On the 30th day of September, 1905, the city council of *Racine* adopted certain subchapters to the general charter law, among which was ch. 14, relating to schools, which included sec. 925—115. Sec. 926—115 was originated by ch. 360, Laws 1903, which was an act "to prescribe and limit the duties and qualifications of city superintendent of schools in cities of the third class and to provide for his appointment," etc. Said ch. 360, Laws 1903, was amended by ch. 388, Laws 1905, so as to provide for the election of a city superintendent of schools in all cities except cities of the first class by the board of education, and it was specifically provided therein that the act should apply to all cities except those of the first class in which a superintendent was elected or appointed by the board of education. It was also provided that "all acts and parts of acts in conflict with this act are hereby repealed."

Appellant contends that the enactment relates only to cities organized or operating under special charters, and has no application to cities operating under that portion of the general charter law relating to schools. This would seem to be a difficult contention to maintain in view of the express language of the enactment (ch. 388, Laws 1905) that the act shall apply to all cities except those of the first class.

However, it has been repeatedly held by this court that similar statutes are of general application, and the matter need not be discussed further. It is settled against appellant's contentions by *Superior v. Industrial Comm.* 160 Wis. 541, 152 N. W. 151; *State ex rel. Gillen v. Braman,* 173 Wis. 596, 181 N. W. 729. If there is any conflict between sec. 926—115 and sec. 925—115 the latter is repealed by the former, not by implication but by express declaration. We therefore conclude that the board of education was authorized to elect a superintendent of schools for a period not exceeding three years.

The question now arises whether, having entered into a contract with the city superintendent for a definite period, it was competent for the board of education during such period to relieve him from the terms of his contract of employment and to enter into another contract with him covering the same or a portion of the period affected by the preceding contract, at a higher rate of compensation. A great deal of discussion has been indulged as to whether the character of the employment of the superintendent of schools constitutes him an officer or a mere employee. As a matter of public policy a city superintendent of schools should not be held to be a public officer unless such plainly appears to be the legislative intent. In this state a public officer must be a citizen. *State ex rel. Off v. Smith,* 14 Wis. 497; *State ex rel. Schuet v. Murray,* 28 Wis. 96. This is a statutory requirement as to city officers. Sub. (2), sec. 62.09. City boards of education would be greatly hampered in procuring competent superintendents if their selections were confined to citizens of the city or even of the state. It is matter of common knowledge that such bodies frequently deem it for the best interests of the schools of their cities to select men for the position who are not residents of the state. It is quite apparent that the best interests of the schools suggest great freedom of action on the part of the board of education in selecting the superintendent, and it is not to

be inferred that the legislature intended to hamper the board of education in its discharge of this important duty.

The question whether a given employment constitutes the one selected for its discharge an officer or a mere employee is often a difficult one. The line between the two is frequently shadowy and difficult to trace. In examining sec. 926—115, however, we find an absence of many of the recognized characteristics of an office. There is no definite term; the appointee is not required to take an oath; he exercises none of the functions of sovereignty, unless it be in the matter of licensing teachers. While, possibly, these are not indispensable, they are usual characteristics of an office. Whether the legislature intended to constitute the position an office is at least doubtful. In view of the considerations stated, we are disposed to and do hold that the city superintendent of schools was not an officer.

The final question, then, is whether the board of education had power to modify its contract with the superintendent. Sec. 26 of art. IV of the state constitution prohibits the legislature from granting any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into. This declares a wise public policy. It may be stated as a general proposition that those charged with authority and responsibility in the management of public affairs should not be permitted to deny the public the benefits of an advantageous contract. There is much reason in the view that the contract entered into between the board of education and the superintendent constituted something of value which belonged not to the board of education but to the city; that the board of education, having only such powers and authority as are delegated to it either expressly or by implication, was without power to surrender or give away the thing of value represented in the contract. However, it seems to be generally recognized that, unless forbidden by law, the salary of a public officer

may be changed from time to time even during the continuance of his term. 2 McQuillin, Mun. Corp. § 528; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557; *Kollock v. Dodge,* 105 Wis. 187, 80 N. W. 608. It has been held that the constitutional provision referred to applies only to public officers whose salaries are paid out of the state treasury. *Milwaukee Co. v. Hackett,* 21 Wis. 613; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557; *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253. Such being the limit of its application so far as officers are concerned, it follows that it applies only to contractors who are paid out of the state treasury. The public policy prompting the constitutional provision is made applicable to county and city officers by express statutory enactment. Sec. 59.15; sub. (6) (b), sec. 62.09, Stats. However, there is no similar provision applicable to county or city contracts, and in analogy to the rule that the salary of officers may be raised or diminished in the absence of law forbidding the same, it must be held that it is competent for city authorities having the power to contract with employees to consent to an abolition of their existing contracts and to provide for an increase of their compensation during the period for which they are under a contract of employment.

Our conclusion, therefore, is that it was competent for the board of education to abrogate the various contracts set forth in the statement of facts and to enter into new contracts with the superintendent affording him higher compensation, and that the appellant is not entitled to the relief asked.

*By the Court.*—Judgment affirmed.