BURLINGTON NORTHERN, INC., and
Burlington Northern Dock Corporation,
Plaintiffs-Appellants,

v.

The CITY OF SUPERIOR, Wisconsin,
Defendant-Respondent. [Case Nos. 84–2358, 84–
2359.]

BURLINGTON NORTHERN RAILROAD
COMPANY and Burlington Northern Dock
Corporation, Plaintiffs-Appellants,

v.

The CITY OF SUPERIOR, Wisconsin,
Defendant-Respondent. [Case Nos. 84–2360, 84–
2361.] †

Supreme Court

*Nos. 84–2358, 84–2359, 84–2360, 84–2361. Argued June 3,
1986.—Decided June 25, 1986.*

(Also reported in 388 N.W.2d 916.)

† Motion for reconsideration denied August 15, 1986, with costs.
ABRAHAMSON, J., took no part.

566

For the plaintiffs-appellants there were briefs by *Robert A. Schnur* and *Michael, Best & Friedrich,* Milwaukee, and oral argument by *Mr. Schnur.*

For the defendant-respondent the cause was argued by *Edward S. Marion,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   We review an order of the circuit court for Douglas county dated October 16, 1984, Douglas S. Moodie, reserve circuit judge, in which the circuit court granted the motion for summary judgment of the defendant and denied the plaintiffs' motion for summary judgment. Plaintiffs appealed to the court of appeals; we accepted jurisdiction by granting the court of appeals' certification request, pursuant to sec. (Rule) 809.61, Stats.

The issue we consider is whether a tax exemption found in sec. 70.40, Stats., entitled "Occupational tax on iron ore concentrates," violates the Commerce Clause of the United States Constitution and, if so,

whether the remainder of the tax scheme is severable from the invalid provision. We conclude that the provision offends the requirements of the Commerce Clause and that it is not severable. We therefore reverse the decision of the circuit court and remand the matter for entry of an order consistent with this opinion.

Section 70.40(1) provides that "every person operating an iron ore concentrates dock in this state" shall pay "an annual occupational tax equal to 5 cents per ton upon all iron ore concentrates handled by or over the dock during the preceding year. . . ."[1] The statute

[1] The entire tax scheme of sec. 70.40, Stats. 1983–84, provides:

"**70.40 Occupational tax on iron ore concentrates.** (1) Except as provided in sub. (6), every person operating an iron ore concentrates dock in this state, shall on or before December 15 of each year pay an annual occupational tax equal to 5 cents per ton upon all iron ore concentrates handled by or over the dock during the preceding year ending April 30 except that as of December 15, 1979, such tax shall apply to the year ending on the preceding December 31. Iron ore concentrates taxed under ss. 70.37 to 70.395 are exempt from taxation under this section. In this section 'dock' means a wharf or platform for the loading or unloading of materials to or from ships.

"(2) Every person on whom a tax is imposed by sub. (1) shall, on May 1 of each year, furnish to the assessor of the town, city or village in which the dock is situated, a full and true list or statement of all iron ore concentrates received or handled by the person during the year ending on April 30 of such year. Beginning in 1979, the list shall be furnished on February 1 and apply to the year ending on the preceding December 31. Any such person who wilfully fails or refuses to furnish the list or statement or who knowingly makes or furnishes a false or incorrect list or statement, shall be fined not exceeding $1,000.

"(3) The tax provided for in this section shall be separately assessed to the person chargeable therewith by the assessor and shall be included in the assessment roll annually submitted by the assessor to the town, village or city clerk and shall be entered by

became effective on June 30, 1977, and was made retroactive to May 1, 1977. 1977 Wis. Laws 29, sec. 1655(38) (c). Section 70.40(1) also includes the following exemption, which is at issue in this case: "Iron ore concentrates taxed under ss. 70.37 to 70.395 are exempt from taxation under this section." Section 70.375, Stats., provides for a net proceeds occupation tax on persons en-

the clerk on the tax roll. The tax shall be paid and collected as taxes on personal property are paid and collected in the town, city or village where the dock is situated, and shall be deductible from gross income for income tax purposes as personal property taxes are deductible under s. 71.04(3). Taxes collected under this section shall be divided as follows: 10% to the state general fund, 20% to the investment and local impact fund created under s. 70.395(2) and 70% to the town, city or village in which the taxes are collected, which shall be remitted and accounted for in the same manner as the state and county taxes collected from property are remitted and paid.

"(4)   If the assessor or board of review has reason to believe that the list or statement made by any person is incorrect, or when any such person fails or refuses to furnish a list or statement as required by law, the assessor or board of review shall place on the assessment roll such assessment against the person as they deem true and just. If such change or assessment is made by the assessor, the assessor shall give written notice of the amount of the assessment at least 6 days before the first or some adjourned meeting of the board of review. If such change or assessment is made by the board of review, notice shall be given in time to allow the person to appear and be heard before the board of review in relation to the assessment. Notice may be served as a circuit court summons is served or by registered mail.

"(5)   All laws not in conflict with this section relating to the assessment, collection and payment of personal property taxes and the correction of errors in assessment and tax rolls, shall apply to the tax imposed in this section.

"(6)   This section does not apply to a municipally owned or operated dock or a dock used solely in connection with an industry and handling no iron ore concentrates except that utilized by the industry."

gaged in mining metalliferous minerals in this state.[2]
Thus, sec. 70.40(1) effectively exempts iron ore concentrates mined and taxed in this state under sec. 70.375 from the tax imposed on the operator of an iron ore concentrates dock.

---

[2] Sections 70.375(2) and (2m), Stats., read as follows:

"**70.375 Net proceeds occupation tax on mining of metallic minerals; computation.** . . .

"(2) *TAX IMPOSED*. (a) In respect to mines not in operation on November 28, 1981, there is imposed upon persons engaged in mining metalliferous minerals in this state a net proceeds occupation tax effective on the date on which extraction begins to compensate the state and municipalities for the loss of valuable, irreplaceable metalliferous minerals. The amount of the tax shall be determined by applying the rates established under sub. (5) to the net proceeds of each mine. The net proceeds of each mine for each year are the difference between the gross proceeds and the deductions allowed under sub. (4) for the year.

"(b) The secretary may promulgate any rules necessary to implement the tax under ss. 70.37 to 70.39 and 70.395(1). In respect to mines not in operation on November 28, 1981, s. 71.11(4), (7m), (8), (20) to (22), (42), (44), (46), (47), (49) and (50) applies to the administration of this section.

"(2m) *TAX IMPOSED*. (a) There is imposed upon persons engaged in mining metalliferous minerals in this state in respect to mines in operation on November 28, 1981, a net proceeds occupation tax effective on the date on which extraction begins to January 1, 1991, to compensate the state and municipalities for the loss of valuable, irreplaceable metalliferous minerals. The amount of the tax shall be determined by applying the rates established under sub. (5) to the average of the net proceeds of the person for the preceding 3-year period. The net proceeds of a person for each year shall be the difference between the gross proceeds, computed under sub. (3) for the year, and the deductions allowed under sub. (4) for the year.

"(b) In respect to mines in operation on November 28, 1981, s. 71.11(4), (7m), (8) and (20) to (22) applies to the administration of this section to January 1, 1991."

The parties have stipulated to the material facts of this case and disagree only about the application of the law.

Burlington Northern Dock Corporation, a wholly-owned subsidiary of Burlington Northern Railroad Company (collectively, Burlington Northern), is the operator of several iron ore concentrates docks in the City of Superior over which it has carried and loaded taconite pellets onto barges for transportation to out-of-state steel mills. Taconite pellets are a condensed form of low-grade iron ore. The term "iron ore concentrates" as used in sec. 70.40, Stats., includes taconite pellets. The taconite passing through the Burlington Northern docks from 1977 through 1980 was mined in Minnesota by various steel producers and manufactured into pellets, carried by Burlington Northern rail to one of three docks operated by Burlington Northern[3] in the City of Superior, and finally loaded onto barges operated by the steel companies for its destination to Canadian and lower Great Lakes ports and steel mills. Burlington Northern did not carry any taconite pellets for its own use, nor were any taconite pellets transported to its docks for any purpose other than for ultimate transferral onto vessels for delivery outside the State of Wisconsin.

Burlington Northern and the City of Superior agree that Burlington Northern was assessed and paid the following taxes as operator of the iron ore docks, pursuant to sec. 70.40(1):

[3] Burlington Northern points out that the newest of its dock facilities was completed in 1977 at a cost of approximately $68 million. It was financed in part through bonds issued by the City of Superior.

For the period May 1, 1977, through April 30, 1978: $322,138;

For the period May 1, 1978, through December 31, 1978: $439,385;

For the period January 1, 1979, through December 31, 1979: $655,714; and

For the period January 1, 1980, through December 31, 1980: $528,622.

This case represents a consolidation of four suits brought by Burlington Northern for refund of taxes and declaratory judgment. Burlington Northern paid taxes under protest to the City of Superior for the four tax periods in question from May 1, 1977, through December 31, 1980. The City of Superior assessed and collected the approximately $2 million in taxes during that period as provided under sec. 70.40, Stats. Burlington Northern now challenges the constitutionality of that statute.

Burlington Northern bases its suits on three grounds: (1) that sec. 70.40 constitutes an unlawful effort by the State of Wisconsin to tax Burlington Northern with respect to its interstate transportation of taconite pellets, in violation of the Commerce Clause of the United States Constitution; (2) that the statute violates the import-export clause of the United States Constitution; and (3) that the statute violates the uniformity clause of the Wisconsin Constitution.

After hearing oral arguments on the parties' cross-motions for summary judgment, the circuit court rendered its memorandum decision dated June 12, 1984. The court thereafter entered its findings, conclusions, and final judgment. The circuit court concluded that the exemption with sec. 70.40(1) for Wisconsin-mined taconite results in discrimination against interstate

commerce. But it determined that the offending provision was severable from the remainder of the statute and therefore did not affect the validity of the overall tax scheme after severance. The court found no other violations of the Commerce Clause, import-export clause, or uniformity clause. The circuit court therefore granted defendant's motion for summary judgment and denied plaintiffs' motion.

Burlington Northern reasserts all of its grounds for relief which it asserted to the circuit court. The City of Superior argues that, if the exemption violates the Commerce Clause, then the remainder of sec. 70.40 is severable and, therefore, is valid and enforceable.

We find that our analysis of sec. 70.40 in relation to the Commerce Clause is dispositive of this review. We therefore do not consider Burlington Northern's other arguments. Similarly, because we determine that the exemption discriminates against interstate commerce and is not severable from the remainder of the statute, we have no opportunity to consider the question certified by the court of appeals: "whether there is sufficient nexus between this state and Burlington Northern to justify imposing an occupational tax levied on its dock operations under sec. 70.40, Stats." We thus reach the result of our decision on fairly narrow grounds.

■

We define at the outset our standard for review. A trial court's determination of a tax statute's compatibility with the Commerce Clause is a constitutional question. This court will review constitutional questions independent of the determination of lower courts. *See, State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984).

The Commerce Clause of the United States Constitution provides that, "The Congress shall have power . . . [t]o regulate commerce . . . among the several states ...." U. S. Const. art. I, sec. 8. The purpose of the commerce clause is "to create an area of free trade among the several States." *McLeod v. J. E. Dilworth Co.,* 322 U.S. 327, 330 (1944); *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 335 (1977). However, the Commerce Clause has not totally eclipsed the " 'power of the States to tax for the support of' " state government or for other purposes. *Boston Stock Exchange,* 429 U.S. at 328–29 (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 199 (1824)).

A state tax is not *per se* invalid merely because it may burden the activity of interstate commerce. *Maryland v. Louisiana,* 451 U.S. 725, 754 (1981). The United States Supreme Court has said that interstate commerce is not dismissed from paying its "just share of [the] state tax burden even though it increases the cost of doing the business." *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 254 (1938).

A state may not indiscriminately tax conduct which constitutes interstate commerce, however. A state tax is generally sustainable against a Commerce Clause challenge "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279 (1977); *Maryland v. Louisiana,* 451 U.S. at 754; *see also, Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 724, 281 N.W.2d 94 (1979), *aff 'd,* 447 U.S. 207 (1980); *Midwestern Gas Transmission Co. v.*

*Revenue Dept.,* 84 Wis. 2d 261, 270, 267 N.W.2d 253 (1978).

Burlington Northern argues that the dock tax meets none of the *Complete Auto* factors and that the entire tax scheme should be held unconstitutional. Applying the same factors, the City of Superior asserts that the dock tax is constitutionally sound. We need not consider all of the *Complete Auto* factors because the third criterion—whether the tax discriminates against interstate commerce—ultimately is dispositive of our review.

No state "may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.' " *Boston Stock Exchange,* 429 U.S. at 329 (quoting *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458 (1959)). To allow such discrimination would undermine the goal of free trade among states which the Commerce Clause was intended to protect. *Id.*

Our analysis of the tax scheme at issue in this case discloses a discriminatory effect on interstate commerce. There can be little dispute—indeed, the City of Superior does not dispute—that the mining and production of taconite pellets in one state and its transshipment into Wisconsin constitutes interstate commerce. Burlington Northern then argues that sec. 70.40 discriminates against Minnesota-produced taconite by effectively favoring Wisconsin-produced iron ore concentrates, including taconite pellets, which are exempt from taxation under the dock tax.

We agree with Burlington Northern. The provision exempting Wisconsin metalliferous metals from

the dock tax constitutes the type of discrimination to interstate commerce which the Commerce Clause was intended to prevent. This state may not use any portion of its tax code to provide a commercial advantage to local business at the expense of interstate commerce. The only real effect of the exemption in sec. 70.40(1) is to enhance or encourage the Wisconsin metalliferous mining industry at the expense of out-of-state miners. Such a plan "falls short of the substantially even-handed treatment demanded by the Commerce Clause." *Boston Stock Exchange,* 429 U.S. at 332; *see also, Maryland v. Louisiana,* 451 U.S. at 759 ("The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce.").

The City of Superior responds that Burlington Northern is not the victim of discrimination because, as operator of the dock, it enjoys the very exemption it is attacking. For example, if Burlington Northern handles taconite mined and produced in Minnesota, it pays 5 cents per ton in taxes; it pays no tax if it handles Wisconsin taconite.

The City of Superior miscomprehends the discriminatory effects of the tax exemption. We recognize that Burlington Northern may not be discriminated against in the first instance as a result of the exemption. But the discriminatory effect of a state tax need not be on the direct taxpayer *per se.* Here, it is out-of-state taconite producers who, as an integral component of interstate commerce, are discriminated against in favor of their Wisconsin counterparts. Evidence in the record indicates, and counsel for Burlington Northern at oral argument stated, that Burlington Northern passes on its tax cost to its taconite-producing customers who use

its dock-loading services. Thus, the customers of the services pay higher or lower prices, depending on the origin of the ore. Wisconsin taconite, not affected by the handling tax, is more attractive, again at the expense of its out-of-state counterpart. As we noted above, the Commerce Clause does not approve of such local favoritism.

The City of Superior argues that Burlington Northern receives a benefit from the exemption for local taconite because Burlington Northern does not pay taxes on Wisconsin-produced taconite. Yet the Supreme Court has recently stated,

> "Virtually every discriminatory statute allocates benefits or burdens unequally; each can be viewed as conferring a benefit on one party and a detriment on the other, in either an absolute or relative sense. The determination of constitutionality does not depend upon whether one focuses upon the benefited or the burdened party. A discrimination claim, by its nature, requires a comparison of the two classifications, and it could always be said that there was no intent to impose a burden on one party, but rather the intent was to confer a benefit on the other." *Bacchus Imports, LTD v. Dias*, 468 U.S. 263, 273, 82 L. Ed. 2d 200, 210 (1984).

Even if we concede for the sake of argument that Burlington Northern is not burdened by the tax exemption, the City of Superior's argument ignores the burden to out-of-state producers, whose taconite is relatively more expensive as a result of the discriminatory exemption.

The City of Superior also argues that local mining companies would not be favored by the tax exemption. Although local mining companies would enjoy the ex-

emption if they shipped across a Wisconsin dock, so would out-of-state companies if they mined Wisconsin ore. The city concludes that sec. 70.40 in operation confers no "direct commercial advantage to local business." *Maryland v. Louisiana,* 451 U.S. at 754.

We do not agree with the city's analysis. Favoring in-state mining over out-of-state mining through the tax exemption discriminates against taconite mined out of state. To paraphrase the Supreme Court, it is irrelevant to the Commerce Clause inquiry that the legislature was motivated by the desire to aid in-state mining rather than to hinder out-of-state mining. *Bacchus Imports,* 468 U.S. at 273, 82 L. Ed. 2d at 210–11. ("[I]t is irrelevant to the Commerce Clause inquiry that the motivation of the legislature was the desire to aid the makers of the locally produced beverage rather than to harm out-of-state producers.")

Finally, the City of Superior intimates that local taconite producers could not have been unfairly advantaged by the exemption because no Wisconsin producer shipped its taconite via the Burlington Northern docks.[4] But the discrimination analysis of the Commerce Clause is not dependent upon the vicissitudes of business decisions. Merely because Wisconsin producers of taconite did not ship their product across Burlington Northern's docks does not mean that the tax exemption is not discriminatory. State tax legislation may be discriminatory on the basis of either purpose or effect. *Bacchus Imports,* 468 U.S. at 273, 82 L. Ed. 2d at 208. The purpose of the exemption in sec. 70.40(1) is to benefit Wisconsin-mined ore, but the exemption

---

[4] The parties stipulated that Burlington Northern operated the only iron ore concentrates docks in this state during the tax periods in question.

does not treat out-of-state ore evenhandedly. The effect of the exemption is to discriminate against out-of-state producers by effectively raising the cost of shipping taconite pellets across the Burlington Northern docks in relation to Wisconsin taconite, which avoids the cost increase.

We next turn to the severability of the unconstitutional exemption from the remainder of the tax statute. Although we agree with the circuit court's conclusion that the tax exemption discriminates against interstate commerce, we hold, contrary to the circuit court's conclusion, that the exemption is not severable from the remainder of the dock tax.

■ The extent of the circuit court's analysis on the severability issue is limited to its citing sec. 990.001(11), Stats. That section provides:

> **"990.001 Construction of laws; rules for.** In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
> "...
> " (11) *SEVERABILITY*. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

Section 990.001(11) sets forth the general rule of construction that an invalid statutory provision is severable from a valid provision. This court is bound to ob-

serve that rule unless observance "would produce a result inconsistent with the manifest intent of the legislature."

Ascertaining the severability of an unconstitutional provision from the remainder of a statute requires a determination of legislative intent, *Madison v. Nickel,* 66 Wis. 2d 71, 78, 223 N.W.2d 865 (1974), which is a question of law. This court need not give deference to trial courts' determinations in matters of law. *Milwaukee Metropolitan Sewerage District v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985).

In determining legislative intent with respect to severability, the first resort is to the language of the statute. *See, Sacotte v. Ideal-Werk Krug & Priester,* 121 Wis. 2d 401, 406, 359 N.W.2d 393 (1984). This is particularly true when the statute at issue contains an express severability clause. *See generally,* 2 Sutherland, *Statutory Construction* sec. 44.10 (4th ed. 1973). When the language of the statute is unclear concerning the severability of an invalid provision, this court may examine the " 'scope, history, context, subject matter and object of the statute in order to discern the intent of the legislature.' " *See, Sacotte,* 121 Wis. 2d at 406 (citing *Green Bay Redevelopment Authority v. Bee Frank,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984)).

The factors to consider in deciding whether a statute should be severed from an invalid provision are the intent of the legislature and the viability of the severed portion standing alone. *Chicago & North Western Transportation Co. v. Pedersen,* 80 Wis. 2d 566, 575, 259 N.W.2d 316 (1977). Invalid provisions of a statute may

not be severed when it appears from the act that the legislature intended the statute to be effective only as an entirety and would not have enacted the valid part by itself. *Madison v. Nickel,* 66 Wis. 2d at 79.

We conclude that the effect of severing the exemption for Wisconsin-mined metallic minerals from the iron ore concentrates dock tax would be contrary to the manifest intent of the legislature. By including the provision "Iron ore concentrates taxed under ss. 70.37 to 70.395 are exempt from taxation" within sec. 70.40(1), the legislature manifested its intent that Wisconsin taconite should be exempt from the calculation of the ore concentrates-handling tax. To sever the statute from the exemption would produce a result inconsistent with express legislative intent: Wisconsin taconite moving through the Burlington Northern docks or any other state dock handling iron ore concentrates would subject the dock operator and the taconite itself to a nonlegislated tax. The tax would be incurred not as a result of legislative will or decree, but because an invalid exemption existed and was severed. A determination of invalidity of an exemption is not a substitute for a determination that the legislature intended to impose the sec. 70.40 tax on Wisconsin taconite. As it stands, the language of the invalid provision expresses the legislative intent that state taconite not be taxed under sec. 70.40.

When the legislature has expressed its intent not to impose a tax, this court must be very reluctant to effect a tax where none previously existed by severing an unconstitutional provision. It is the power of the legislature to tax, not the prerogative of the judiciary. *See,*

Wis. Const. art. VIII, secs. 1, 5. Merely because the exemption was deemed invalid does not allow us to reach the conclusion that the legislature intended that Wisconsin taconite be taxed.

Further, an analysis of secs. 70.37–70.395 and sec. 70.40 in tandem suggests that the legislature intended to avoid a double taxation of Wisconsin-mined taconite. That intent would be defeated if the unconstitutional exemption were severed.

Chapter 31 of the Laws of 1977 created secs. 70.37–70.395 and repealed prior mining tax statutes. 1977 Wis. Laws 31, secs. 10 and 11. The new mining tax scheme placed a net proceeds occupation tax on persons extracting metalliferous metals. It became effective on July 7, 1977. The unconstitutional exemption at issue in this case took its present form in ch. 418 of the Laws of 1977. The exemption became effective on May 19, 1978, approximately one year after sec. 70.40 took effect and ten and one-half months after secs. 70.37–70.395 became effective.

The precursor to the exemption at issue in this case read, "Iron ore concentrates taxed under s. 70.91 are exempt from taxation under this section." *See,* 1977 Wis. Laws 29, sec. 750g. Section 70.91, Wis. Stats. 1977 (repealed by 1977 Wis. Laws ch. 31, sec. 11), the old mining tax plan, was roughly analogous to sec. 70.375(2), Stats. It imposed a property tax computed on the amount of low-grade iron ore mined in Wisconsin.

The history of tax legislation on mining and mining-related activities strongly suggests that the legislature intended to avoid a double tax within sec. 70.40 on ore concentrates already taxed under either sec. 70.91, Wis. Stats. 1977, or sec. 70.375, Stats. To now effect a double tax—by severing the exemption from the

remainder of the statute—where the legislature intended only a single tax would be contrary to legislative intent.

The City of Superior suggests that the legislature could not have intended that sec. 70.40 be applicable only in its entirety. It points to the fact that the present exemption within sec. 70.40(1), Stats., was in fact enacted approximately one year after the effective date of sec. 70.40. [5]

As we noted above, however, the original version of sec. 70.40 included an exemption analogous to the present exemption. The old provision exempted iron ore concentrates taxed under sec. 70.91 from the tax under sec. 70.40. It is insignificant that the present exemption was enacted one year after the passage of sec. 70.40; the new exemption merely reflects the changes made in the overall taxing scheme for mining. The present exemption is not a legislative afterthought added to sec. 70.40. Rather, it is an updated version of the original exemption enacted within sec. 70.40. *See*, 1977 Wis. Laws 29, sec. 750g. The updating of the exemption does not indicate that the legislature might have considered the exemption severable from the rest of sec. 70.40. On the contrary, the legislative history of the exemption suggests that, from its inception, the

---

[5] As we noted above, sec. 70.40 became effective on June 30, 1977, but had retroactive effect on May 1, 1977. The present form of the exemption became effective on May 19, 1978.

If the City of Superior's premise is correct, then the city raises a valid argument that the unconstitutional provision is severable from the remainder of sec. 70.40: since the legislature initially enacted sec. 70.40 without the exemption, the legislature arguably intended that sec. 70.40 be operative without the exemption if it is later deemed invalid.

exemption was an integral part of the overall scheme of taxing operators of iron ore concentrates docks and was intended to avoid a double tax on iron ore concentrates.[6]

We conclude that the legislature intended to have sec. 70.40, Stats., be effective only in its entirety. To sever sec. 70.40 from the unconstitutional exemption would have the unlegislated effect of taxing dock operators for handling Wisconsin-mined ore concentrates. This court will be loath to effect a tax in situations where the legislature has indicated that no tax be levied.

Because sec. 70.40 is not severable from the unconstitutional provision, sec. 70.40 must be considered invalid in its entirety. The trial court erroneously granted the defendant's summary judgment motion and denied plaintiffs' similar motion. We therefore reverse the decision of the circuit court and remand for vacation of the judgment in favor of the defendant. We instruct the circuit court to enter its judgment in favor of the plaintiffs.

Again, we decide this case on the narrow grounds of discrimination to interstate commerce. We therefore

---

[6] The assistant attorney general, who represented the City of Superior on brief and at oral argument of this case, noted that the legislature recently amended sec. 70.40(1) to exclude the exemption for Wisconsin-mined ore. *See*, 1985 Wis. Laws 29, sec. 1216b. Based on this information, the assistant attorney general asks this court to infer that the legislature intended that sec. 70.40(1) be severable from the unconstitutional exemption. Our analysis of legislative intent, however, is limited to the inception of the statute through the 1980 tax year. Conduct of the legislature almost five years after the last tax year in question in this case will not serve to enlighten our analysis of legislative intent during the time period in question.

have no opportunity to consider Burlington Northern's other substantive arguments for invalidating the statute. Because we have held that sec. 70.40 is not severable from the unconstitutional exemption and, therefore, is invalid, we do not consider Burlington Northern's argument that sec. 70.40(6), Stats., discriminated against interstate commerce during the relevant time period.[7]

*By the Court.*—The decision of the circuit court is reversed. The cause is remanded with instructions.

HEFFERNAN, CHIEF JUSTICE *(dissenting)*. The majority opinion first finds that the exemption within sec. 70.40(1), Stats., for Wisconsin-mined taconite results in discrimination against interstate commerce and then holds that the exemption is not severable from the remainder of the dock tax, thus invalidating sec. 70.40 in its entirety. The majority claims that:

> "By including the provision 'Iron ore concentrates taxed under secs. 70.37 to 70.395 are exempt from taxation' within sec. 70.40(1), the legislature manifested its intent that Wisconsin taconite should be exempt from the calculation of the ore concentrates-handling tax. . . .
>
> "Further, an analysis of secs. 70.37–70.395 and sec. 70.40 in tandem suggests that the legislature intended to avoid a double taxation of Wisconsin-

---

[7] Section 70.40(6), Stats., provided:

"This section does not apply to a municipally owned or operated dock or a dock used solely in connection with an industry and handling no iron ore concentrates except that utilized by the industry."

Section 70.40(6) has been repealed by 1985 Wis. Laws 29, sec. 1216d.

mined taconite. That intent would be defeated if the unconstitutional exemption were severed." At pages 581, 582.

The majority has incorrectly applied the severability statute, sec. 990.001(11), Stats., in reaching its conclusion. Accordingly, I dissent.

Sec. 990.001(11), Stats., provides, in part, that:

> "If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

There is nothing within the meaning of sec. 990.001(11), Stats., which requires the trial court to determine whether the severing of a provision within one statute would invalidate or affect another statute. This court has said in *Chicago & Northwestern Transportation Co. v. Pedersen,* 80 Wis. 2d 566, 575, 259 N.W.2d 316 (1977), that:

> "The intent of the legislature and the viability of the severed portion of the statute when standing alone are the factors to consider when deciding whether a statute should be severed. Material provisions of a statute may be eliminated.
> " '. . . if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone.' " (Citations omitted.)

Section 70.40, Stats., can easily stand alone without the exemption provisions. I would hold the exemp-

tion to be invalid but severable. I would then apply the four-pronged test of *Complete Auto Transit, Inc., v. Brady, Chairman, Mississippi Tax Comm.,* 430 U.S. 274, 279 (1977), to the remainder of the statute to sustain this tax against Commerce Clause challenge.

The court of appeals certified this case on the question whether sufficient nexus exists between Burlington Northern and the City of Superior/State of Wisconsin. Burlington Northern built a new dock at a cost of $70,000,000 to handle taconite pellets, part of which was financed through the issuance of industrial revenue bonds by the City of Superior. About 125 persons were employed at the facility and about 40,000 tons of taconite were handled during the taxable period. These activities unquestionably formed a sufficient nexus between Burlington Northern and the taxing state, as required by *Complete Auto.*

In footnote 6, at page 584, the majority notes that the legislature has recently amended sec. 70.40(1), Stats., to exclude the exemption for Wisconsin-mined ore. The majority's unwillingness to address the validity of sec. 70.40 under the *Complete Auto* test leaves the parties in the same position at the end of this lawsuit as at the beginning of it, not knowing whether sec. 70.40 would be sustained under a Commerce Clause challenge. As stated above, I believe it should be sustained and, therefore, I respectfully dissent.