TOM LOFTUS, Chairperson Assembly Organization Committee
The 1987 Assembly Bill 265, if enacted, would provide increased retirement benefits to most Wisconsin Retirement System (WRS) participants currently working and already retired. You have requested my opinion as to whether that bill is subject to the "three-fourths vote" requirement and meets the "sufficient state funds" requirement of article IV, section 26 of the Wisconsin Constitution.
Article IV, section 26 of the Wisconsin Constitution states in part as follows:
 The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into: . . . . This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits.
This provision thus prohibits legislation increasing retirement benefits of those no longer employed unless the legislation is enacted by a "three-fourths vote" and "provide[s] for sufficient state funds to cover the costs of the increased benefits." Stateex rel. Thomson v. Giessel, 262 Wis. 51, 55, 53 N.W.2d 726
(1952); 60 Op. Att'y Gen. 463 (1971).
A three-fourths vote is required by article IV, section 26 of the Wisconsin Constitution to enact legislation that provides "increased benefits for persons who have been or shall be granted *Page 225 
benefits of any kind under a retirement system." While it could be argued that "persons who . . . shall be granted benefits" includes present employes, that argument is in my view without substance. The prohibition, of article IV, section 26 against increasing compensation is directed to those no longer employed. This is clear from the first sentence of such section which states "[t]he legislature shall never grant any extra compensation to any public officer, agent, servant or contractor,after the services shall have been rendered or the contractentered into." The prohibition does not extend to those still employed. In Thomson v. Giessel (first Giessel case) the court held that a statute providing additional payments to teachers already retired violated article IV, section 26. In State ex rel.Thomson v. Giessel, 265 Wis. 558, 61 N.W.2d 903 (1953) (secondGiessel case), the court reviewed legislation enacted after the first Giessel case which provided for rehiring retired teachers on a standby basis and paying of compensation for such standby service. The court in the second Giessel case declined to consider the reason that the Legislature passed the legislation and found the contracts valid on their face under article IV, section 26. Both of these cases were decided prior to the amendments to article IV, section 26 authorizing raising of benefits first of teachers and later of all retirees under the WRS after they no longer were working for a participating employer.
The Giessel cases indicate that the prohibition is against raising compensation after employment, not against raising compensation during the period of employment. This is consistent with the contract language of section 40.19 (1), Stats., which states in part:
 Rights exercised and benefits accrued to an employe under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act. The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights.
Benefit rights vest at the time that employment is completed.Thomson v. Giessel, 262 Wis. at 55, 65. Article IV, section 26 does not prohibit the increasing of benefits while one is still employed. Thus *Page 226 
the sentence of such section "[t]his section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system" does not apply to those still employed. The purpose and effect of that language then is to allow the Legislature to increase benefits for those no longer employed regardless of whether they currently receive a WRS retirement benefit or for whatever reason are entitled to but have not yet applied for and commenced receiving such a benefit.
For example, a WRS participant can terminate his employment with the state or a municipality prior to normal retirement date (65 or 62 with 30 years of service for the general category employe) and wait to apply for and commence receiving his retirement benefit until he reaches normal retirement date. So also could a participant terminate employment and choose not to commence his annuity until long after normal retirement date. See
sec. 40.23 (1), Stats. This language of article IV, section 26 thus allows the Legislature to increase benefits for those no longer working regardless of whether they applied for and are receiving a retirement annuity or have not yet applied for and commenced receiving the retirement benefit. Without the words "or shall be granted," a participant who had terminated employment but had not yet commenced receiving a WRS annuity would be excluded from the increased benefit. That such was the intent of the constitutional amendment in 1973 clearly appears from the ratification question included by the Legislature in 1973 Joint Resolution 15. Such ratification question states:
 "Shall section 26 of Article IV of the constitution be amended to permit the legislature to increase the pensions of persons who already have retired under any public retirement system (such retirement benefits already may be granted to teachers), and to require the state to provide sufficient state funds to cover the costs of the increased benefits to all persons retired under a public retirement fund."
The emphasis here is on those who have terminated service, not those participants still working.
It is, therefore, my opinion that those portions of 1987 A.B. 265 that increase retirement benefits for WRS participants no longer working for a WRS participating employer would be constitutionally valid only if enacted by a three-fourths vote. Those portions of the bill relating to participants employed on date of enactment *Page 227 
may, however, be severable and effective if enacted by a lesser affirmative vote.
Section 14 of 1987 A.B. 265 provides for a "special investment performance dividend" to be paid to retiree participants of the WRS. See sec. 40.04 (3)(e)3., Stats., which would be created by section 14 of 1987 A.B. 265. Since the resulting increased retirement annuity is an increase in compensation for services already rendered, the three-fourths affirmative vote requirement of article IV, section 26 of the Wisconsin Constitution is applicable. Thomson v. Giessel, 262 Wis. at 65.
Other sections of 1987 A.B. 265 increase retirement benefits prospectively for employes still working. See secs. 7-11, 15, 23-24, 26, 31-36, 38, 45, 47-48, and 53. These benefit increases are not subject to the three-fourths vote requirement if the portions of the bill providing these prospective benefits are severable from the remainder of the bill.
The Legislature has adopted a rule of statutory construction regarding severability. Section 990.001 (11) provides:
 Construction of laws; rules for. In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
. . . .
 (11) SEVERABILITY. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.
As stated by the court in Burlington Northern v. Superior,131 Wis.2d 564, 579-81, 388 N.W.2d 916 (1986); cert. denied107 S.Ct. 883 (1987):
 Section 990.001 (1) sets forth the general rule of construction that an invalid statutory provision is severable from a valid provision. This court is bound to observe that rule unless observance "would produce a result inconsistent with the manifest intent of the legislature." *Page 228 
 Ascertaining the severability of an unconstitutional provision from the remainder of a statute requires a determination of legislative intent [case cite omitted], which is a question of law . . .
 In determining legislative intent with respect to severability, the first resort is to the language of the statute. [Case cite omitted.] This is particularly true when the statute at issue contains an express severability clause. . . .
 The factors to consider in deciding whether a statute should be severed from an invalid provision are the intent of the legislature and the viability of the severed portion standing alone. [Case cite omitted.] Invalid provisions of a statute may not be severed when it appears from the act that the legislature intended the statute to be effective only as an entirety and would not have enacted the valid part by itself.
The court tells us that the two factors to consider in deciding whether an invalid provision is severable from the remainder of a statute are "the intent of the legislature and the viability of the severed portion standing alone." Burlington Northern,131 Wis.2d at 580. I find nothing in 1987 A.B. 265 in its present form that would preclude severance of the payment of the "special investment performance dividend" from the prospective benefit improvements established for those employed on the effective date of the statute that would be created. It is therefore my opinion that the portion of 1987 A.B. 265 which would be rendered invalid by a less than three-fourths affirmative vote is severable from the remainder of the bill. The remaining and controlling factor to be considered is the intent of the Legislature.
No express statement of the Legislature regarding severability is contained in 1987 A.B. 265. While the bill in its present form appears to address the needs of the majority of the participants in the WRS both working and retired, I note that other bills introduced in this session relate to specific portions of the membership separately. The 1987 A.B. 462 provides WRS benefit improvements mainly for active participants and does not include retired participants. 1987 Senate Bill 20, on the other hand, relates solely to annuitants. I find nothing in the report of the Joint Survey Committee on Retirement Systems in its statutorily required report (sec. 13.50 (6), Stats.) indicating intent regarding severability. As the *Page 229 
supreme court instructed in Burlington Northern, 131 Wis.2d at 580, legislative intent is a question of law and deference need not be given by that court to lower courts' determinations of legislative intent.
I therefore consider it inappropriate to speculate as to the intent of the Legislature since 1987 A.B. 265 is still in the legislative process and the intent thus has not been fully developed. The Legislature could insert an express statement of intent or enact the bill in an amended form that would provide further indication as to the intent regarding severability. It is my view that such a determination of intent must focus on the bill as enacted and not be based on its transitory status.
Article IV, section 26 of the Wisconsin Constitution requires that an act, which increases benefits for a WRS participant, no longer working for a participating employer, must "provide for sufficient state funds to cover the costs of the increased benefits." The increased benefits we are concerned with is the "special investment performance dividend" which would be provided to annuitants by section 14 of 1987 A.B. 265. Other benefit improvements in the bill are for employes still working and are not within the article IV, section 26 exclusion and thus do not come within the exception from the exclusion that we are concerned with here.
Section 14 of 1987 A.B. 265 states in part as follows:
 SECTION 14. 40.04 (3)(e) of the statutes is created to read:
 40.04 (3)(e)1. As of the last day of the first full month occurring after the effective date of this paragraph . . . . [revisor inserts date], $1,300,000,000 shall be distributed from the transaction amortization account of the fixed retirement investment trust to the fixed annuity reserve and the fixed employer accumulation reserve as follows:
 a. To the fixed annuity reserve, an amount equal to a percentage of the total distribution determined by dividing the fixed annuity reserve balance on the prior January 1 by the total balance of the fixed annuity reserve plus the employe accumulation reserve and the employer accumulation reserve of the fixed retirement investment trust on the prior January 1.
. . . . *Page 230 
 3. The resulting increase in the fixed annuity reserve, after crediting the annuity reserves' actuarial contingency reserve under sub. (6)(b) with an amount determined to be sufficient to the purposes of that reserve, shall on recommendation of the actuary be distributed on or before January 1, 1988, as a special investment performance dividend in accordance with the procedures specified in s. 40.27 (2). . . .
Section 14 of 1987 A.B. 265 clearly indicates that the monies to finance the "special investment performance dividend" would come from the "transaction amortization account," an account within the "fixed retirement trust" established under the "public employe trust fund" created by section 40.01 (1). See sec. 40.04
(3), Stats. The question thus presented is whether the "public employe trust fund" monies constitute "state funds" under the prohibitions of article IV, section 26.
It is my opinion that the "public employe trust fund" constitutes "state funds" as that term is used in article IV, section 26 of the Wisconsin Constitution. "State funds" constitutes funds paid from the state treasury and includes the general fund, segregated funds, and funds in trust. See B. F.Sturtevant Co. v. Industrial Comm., 186 Wis. 10, 19-21,202 N.W. 324 (1925).
A previous attorney general was asked whether article IV, section 26 prohibited increases after retirement which were funded out of segregated funds. His reply states in part as follows (60 Op. Att'y Gen. 298, 304-5 (1971)):
 I am not unmindful of the fact that the court in Singer v. Boos, [44 Wis.2d 374, 171 N.W.2d 307 (1969)], used language which would indicate that Art. IV, sec. 26, Wis. Const., prohibitions apply only to public officers paid out of the general fund. Such language at page 380 reads:
 "This court has repeatedly held that the constitutional prohibition in art. IV, sec. 26, applies only to public officers who are paid out of the state general fund."
 In reading the cases cited by the court for this proposition I find no showing that the court intended to change its previous holdings that the payment which is precluded by the constitution is from the State Treasury. I find no indication that the court intended, in Singer v. Boos, to construe Art. IV, sec. 26, *Page 231 
Wis. Const., as allowing payment of extra compensation to employes paid from segregated funds rather than the State general fund.
 State ex rel. Holmes v. Krueger (1955), 271 Wis. 129, 72 N.W.2d 734, and Columbia County v. Wisconsin Retirement Fund
(1962), 17 Wis.2d 310, 116 N.W.2d 142 are cited by the court as authority for the above quoted statement in Singer v. Boos. The Holmes case refers to extra compensation payable out of the public treasury of the State. No mention is made of the term State general fund. See pages 133 to 136. In the Columbia County
case, the material statement on page 326 reads:
 "The Wisconsin Constitution, sec. 26, art. IV, does not apply to counties. Sieb v. Racine (1922), 176 Wis. 617, 187 N.W. 989; Dandoy v. Milwaukee County (1934) 214 Wis. 586, 254 N.W. 98."
 Sieb v. Racine (1922), 176 Wis. 617, 187 N.W. 989, at page 625, also uses the language state treasury as follows:
 "* * * It has been held that the constitutional provision referred to applies only to public officers whose salaries are paid out of the state treasury."
 I, therefore, see no indication that the court intended in Singer v. Boos, supra, to except segregated funds from the constitutional prohibition and I, therefore, consider State employes paid from segregated funds subject to Art. IV, sec. 26, Wis. Const.
(Emphasis supplied in original.)
The public employe trust fund is included in the prohibited sources for the general prohibition of article IV, section 26. I find no basis for excluding that fund from the "state funds" requirement later inserted in that section.
The requirement that there be sufficient "state funds" allocated in the bill to pay for the retirement benefit improvement is directed toward precluding prospective assessment of benefit improvement costs against non-state fund participating employers rather than toward what state treasury source is used. Section 14 of 1987 A.B. 265 allocates a portion of the public employe trust fund from the transaction amortization account to the fixed annuity reserve to *Page 232 
fund payment of the "special investment performance dividend" to WRS annuitants. This use of "state funds" is consistent with article IV, section 26 of the Wisconsin Constitution.
DJH:WMS *Page 233